**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ETHEL AUSTIN-SPEARMAN, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>AARP, a District of Columbia corporation, and AARP SERVICES INC., a Delaware corporation,<br><br>*Defendants*. | Case No. |

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Plaintiff Ethel Austin-Spearman ("Plaintiff" or "Austin-Spearman"), through her undersigned counsel, hereby respectfully moves the Court for an Order certifying this case as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and (b)(3), but requests, pursuant to Local Civil Rule 23.1(b), that the Court enter and continue the instant motion until after the completion of discovery on class-wide issues, at which time Plaintiff will submit a full memorandum of points and authorities in support of class certification.[1]

[1] Plaintiff filed this Motion simultaneously with her Class Action Complaint and Demand for Jury Trial (Dkt. 1) ("Complaint") to prevent Defendants AARP and AARP Services Inc. (collectively referred to in the singular as "AARP") from attempting a so-called "pick off" to moot her representative claims (i.e., by tendering to her the full amount of individual damages alleged in the Complaint). *See Brunet v. City of Columbus*, 1 F.3d 390, 399–400 (6th Cir. 1993) (noting that a "pick off" does not moot the named plaintiff's claims "where a motion for class certification has been pursued with reasonable diligence and is then pending before the district court."); *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011) ("Class-action plaintiffs can move to certify the class at the same time that they file their complaint. The pendency of that motion protects a putative class from attempts to buy off the named plaintiffs . . . If the parties have yet to fully develop the facts needed for certification, then they can also ask the district court to delay its ruling to provide time for additional discovery or investigation."); *see also Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1051 (5th Cir. 1981). Because Plaintiff filed this Motion simultaneously with the filing of the Complaint,

## I. INTRODUCTION

In an era when the collection and monetization of consumer data proliferates on an unprecedented scale, concern over the exploitation of digital information has reached a pinnacle. An entire industry is now devoted to the collection and commercialization of consumer data, and while much of this data collection occurs with consumers' consent, the increasing value of personal information has led some to collect (and later sell) personal information without the permission of Internet users. Plaintiff filed this putative class action to put an end to, and to seek redress for, such unconsented-to data collection. Specifically, her Complaint challenges Defendants' practice of allowing their members' sensitive and personally identifiable information to be systematically collected—and later used—by third parties without authorization, in derogation of consumer privacy rights, and contrary to Defendants' consumer-facing disclosures. Because this collection occurred uniformly as to the entire class as a whole, this matter presents a textbook case for class certification.

Defendant AARP is one of the largest organizations in the United States for people aged 50 years and over. Best known for its eponymous non-profit advocacy and lobbying group, AARP also provides benefits to its members, including discounts on shopping, dining, and travel, as well as financial and insurance-related products and services. AARP offers these benefits through its wholly owned and for-profit subsidiary, Defendant AARP Services, Inc.

In order to access AARP's online membership benefits—i.e., through the AARP website—consumers must first register and pay for a membership with AARP at a cost of $16 per year. Next, members must register for an account on AARP's website and accept Defendants' Terms of Service and Privacy Policy, which promise that AARP only allows

---

she was unable to concur with Defendants regarding the relief sought in this Motion as required by Local Civil Rule 7(m).

specifically-named third party companies to collect AARP members' information, and that AARP allows *no* third party company to collect AARP members' personally identifiable information ("PII"). Despite its express promises, however, AARP allows third party data analytics companies, including at least Adobe and Facebook, to systematically collect its members' PII—including their name, race, email address, state of residence, and employment information—along with the specific materials they've viewed on the AARP website.

Had AARP informed its members that third party companies systematically use the AARP website to collect their PII, they would have been unwilling to purchase their AARP memberships at the price charged, if at all. Thus, in failing to disclose their practices to their members, Defendants uniformly delivered a less valuable service than their members paid for. As such, Plaintiff and each member of the Class has suffered damages as a result of Defendants' conduct.

For these reasons and as discussed further below, the proposed Class meets each of the requirements for certification under Federal Rules 23(b)(2) and (b)(3), and the instant motion should be granted in its entirety. Notwithstanding, Plaintiff respectfully requests that, in accordance with Local Civil Rule 23.1(b), the Court enter and reserve ruling on the motion until after the completion of discovery on class-wide issues, at which time Plaintiff will submit a full memorandum of points and authorities in support of class certification.

## II. FACTUAL BACKGROUND

### A. Facts Applicable to All Members of the Putative Class.

AARP's website allows its members to create online accounts to access certain membership benefits, including benefits that are accessible only to paying AARP members through the AARP website. (Compl. ¶¶ 1–2.) Upon registering, members are prompted to input

their name and other demographic information, including their first name, last name, country, zip code, and birthday. (*Id.* ¶ 19.) To proceed with registration, members must also agree to AARP's Terms of Service and Privacy Policy. (*Id.*) The Privacy Policy states that only certain (i.e., specifically named) entities may collect members' "nonpersonally identifiable information" through the AARP website, and directs them to an online tool through which members may opt-out of such third-party data collection. (*Id.* ¶¶ 23–25.)

Unfortunately, AARP doesn't reveal the whole story. In fact, AARP systematically allows at least two data analytics companies—Facebook and Adobe—to collect its members' PII on the AARP website without their knowledge or consent. (*Id.* ¶ 28.) For example, if a member visits the AARP website while separately logged in to Facebook—even through a previous browsing session—source code integrated into the AARP website permits Facebook to collect certain information. (*Id.* ¶¶ 35–40.) That information includes both the title of the page the member viewed and the member's Facebook ID—a unique identifier associated with a particular Facebook user.[2] (*Id.* ¶ 34, 38.)

Similarly, AARP's website contains source code created by Adobe (but integrated into the AARP website by Defendants) that silently collects members' PII. (*Id.* ¶¶ 41, 43.) As a member navigates through the AARP website, the AARP code forces the members' web browser to transmit certain information—some of which was originally retrieved from AARP's member database—to Adobe. (*Id.*) The transmitted information includes both PII and data revealing the online materials accessed and viewed by the member on the AARP website. (*Id.* ¶¶ 42–43)

[2] As explained in the Complaint, a Facebook ID is a unique numeric string assigned by Facebook to a specific user when their account is first created. This string may be inputted into a web browser to view an individual's Facebook "profile" page, thus making it a personal identifier. (*Id.* ¶ 34.)

Through this method, Adobe is able to collect a wealth of information about AARP members, including their name, age, race, email address, state of residence, health insurance information, employment data, and family demographic information. (*Id.* ¶ 43.)

Both Adobe and Facebook maintain lucrative data analytics operations powered by vast quantities of data about consumers' online behavior. (*Id.* ¶¶ 48–51.) Both companies use the information they collect from AARP and other sources to build comprehensive consumer profiles, which contain details about virtually every aspect of individuals' digital lives. (*Id.* ¶ 46.) This data is then sold to advertisers, who use it to target their marketing to vulnerable segments of the population. (*Id.* ¶¶ 51–53.)

**B. Facts Applicable to Plaintiff Austin-Spearman.**

Plaintiff has been a member of Facebook's social network since late 2007. (*Id*. ¶ 55.) She frequently accesses her Facebook account through her web browser and enables the "keep me logged in" function when signing in to her account. (*Id*.)

In late 2010, Plaintiff paid approximately $43 for a three-year membership to AARP. (*Id*. ¶ 56.) After purchasing her membership, she navigated to AARP's website to register for an online account. (*Id*. ¶ 57.) Before she registered, Plaintiff viewed and agreed to AARP's Terms of Service and Privacy Policy. (*Id*.) The Terms of Service stated that it "constitutes the entire agreement between [AARP] and [Plaintiff] with respect to the subject matter contained in [the] agreement and supersedes all previous and contemporaneous agreements, proposals, and communications, written and/or oral." (*Id*. ¶ 58.) The Terms of Service also incorporated AARP's Privacy Policy by reference. (*Id*.)

Plaintiff reviewed AARP's Privacy Policy before she agreed to register for her online account with AARP. (*Id*. ¶ 59.) In the Privacy Policy, AARP represented that it (i) would only

allow certain third parties to collect "nonpersonally identifiable information" while she browsed the AARP website and (ii) would not allow any third parties to collect her PII. (*Id.*) Based upon the representations contained in the Privacy Policy, Plaintiff believed that AARP would not allow her PII to be collected by third parties through the AARP website without her permission. (*Id.* ¶ 60.)

Plaintiff never consented, agreed, or otherwise permitted AARP to release her PII to any third party. (*Id.* ¶ 61.) Nevertheless, through her use of AARP's website, AARP routinely permitted (and continues to permit) third parties Facebook and Adobe to collect her PII, along with the specific materials she viewed—including the titles of articles she read and videos she watched on the AARP website, and other detailed information, such as her Facebook ID, name, race, email address, state of residence, and employment information. (*Id.*)

If she had known that AARP would allow her PII to be transmitted to third parties, Plaintiff would either have attempted to purchase her AARP membership at a lower price, or not subscribed to AARP's service at all. (*Id.* ¶ 62.) Based on her experience with AARP and its decision to allow third parties to routinely collect her PII without her consent, Plaintiff decided not to renew her AARP membership. (*Id.*)

**C. The Proposed Class.**

As a result of Defendants' conduct described above, Plaintiff brought the instant lawsuit and now seeks certification of a class of similarly situated individuals (the "Class"), defined as follows:

> All current and former AARP members who (i) paid a membership fee to AARP and (ii) who had their PII collected by a third party, including either Facebook or Adobe, while visiting AARP's website.

(*Id.* ¶ 63.) As demonstrated below, the proposed Class meets each of Rule 23's requisites to

certification and therefore, the instant motion should be granted in its entirety.

## III. THE PROPOSED CLASS SATISFIES EACH OF THE REQUIREMENTS FOR CLASS CERTIFICATION.

The Court may certify a class when the plaintiff demonstrates that the proposed class and proposed class representatives meet Rule 23(a)'s four prerequisites and at least one of the three provisions of Rule 23(b). Rule 23(a) requires that (i) the proposed class is so numerous that joinder of all individual class members is impracticable (numerosity); (ii) that there are common questions of law and fact amongst class members (commonality); (iii) that the proposed representative's claims are typical of those of the class (typicality); and, (iv) that both the named representative and his or her counsel have and will continue to adequately represent the interests of the class (adequacy).

In this case, Plaintiff seeks certification of the proposed Class under both Rule 23(b)(2) and (b)(3). In order to certify a class under Rule 23(b)(2), a plaintiff must show that the party opposing certification has acted or failed to act on grounds generally applicable to the class as a whole, "so that final injunctive relief or corresponding declaratory relief is appropriate . . ." Fed. R. Civ. P. 23(b)(2). Under Rule 23(b)(3), there must be (i) questions of law or fact common to the proposed class members which predominate over any questions affecting only individual members, and (ii) the class mechanism must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

In determining whether to certify a class, the Court does not inquire into the merits of a plaintiff's claims. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974); *Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, 246 F.R.D. 293, 299 (D.D.C. 2007) ("The Court will not—and cannot—make a preliminary inquiry into the merits of Plaintiffs' claim in determining whether to certify the class."). Instead, "[i]n considering a motion for class certification, a court

presumes the allegations in the complaint to be true." *Moore v. Napolitano*, 926 F. Supp. 2d 8, 27 (D.D.C. 2013). Further, "courts tend to favor class certification when in doubt." *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 258 (D.D.C. 2002).

As shown below, the Class satisfies each of Rule 23(a)'s prerequisites and the requirements for certification under Rules 23(b)(2) and (b)(3).

**A. The Numerosity Requirement is Satisfied.**

Rule 23(a)'s first requirement, numerosity, is satisfied where "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). To satisfy the numerosity requirement, a plaintiff "need not provide the exact number of potential class members." *Bynum v. District of Columbia*, 214 F.R.D. 27, 32–33 (D.D.C. 2003) ("So long as there is a reasonable basis for the estimate provided, the numerosity requirement can be satisfied without precise numbers.") (quotation omitted); *see also Cohen v. Chilcott*, 522 F. Supp. 2d 105, 114 (D.D.C. 2007) ("Courts in this District have generally found that the numerosity requirement is satisfied and that joinder is impracticable where a proposed class has at least forty members.").

In this case, Plaintiff alleges—and discovery will show— that AARP allowed Facebook and Adobe to collect the PII of *thousands* of its members. (Compl. ¶ 64.) *See In re Vitamins Antitrust Litig.*, 209 F.R.D. at 259 ("It is clear that the two proposed classes more than meet the numerosity requirement of Rule 23(a)" if proposed class members are likely to number in the hundreds); Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 3:5, 243-46 (4th ed. 2002) ("Class actions under the amended Rule 23 have frequently involved classes numbering in the hundreds, or thousands . . . In such cases, the impracticability of bringing all class members before the court has been obvious, and the Rule 23(a)(1) requirement has been easily met.").

Since the potential number of Class members affected by Defendants' conduct numbers

in the thousands, the numerosity requirement is satisfied.

**B. The Commonality Requirement is Satisfied.**

Next, Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To meet the commonality requirement, the named-representative is required to demonstrate that the proposed class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 147, 157 (1982)). In other words, commonality requires that the claims of the class "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. A "common nucleus of operative facts" generally satisfies the commonality requirements of Rule 23(a)(2), and factual variations among the class members will not defeat the commonality requirement "so long as a single aspect or feature of the claim is common to all proposed class members." *In re Vitamins Litig*., No. 99-197 TFH, 2001 WL 856292, at *2 (D.D.C. July 25, 2001); *Bynum*, 214 F.R.D. at 33. Indeed, a single common question may be sufficient to satisfy this rule." *Bynum*, 214 F.R.D. at 33 (citation omitted). Generally, the commonality requirement is "easily met." *In re Vitamins Antitrust Litig.*, 209 F.R.D. at 259.

As alleged in Plaintiff's Complaint, all members of the Class share common questions of law and fact that predominate over issues affecting only individual members. (Compl. ¶ 65.) Each member of the Class was commonly (and identically) affected by Defendants' conduct, which stemmed from the uniform website code and functionality of the AARP website. Those common factual and legal issues include: (1) whether Defendants, through their website, unlawfully permitted—and continue to permit—third parties to collect their members' PII;

(2) whether Defendants' actions violate the District of Columbia's Consumer Protection Procedures Act (D.C. Code §§ 28-3901, *et seq.*); (3) whether Defendants' actions were committed knowingly; (4) whether Defendants' actions constitute intentional misrepresentation; and (5) whether Defendants' actions constitute breach of contract. (*Id.*)

Accordingly, the commonality requirement is met.

**C. Plaintiff's Claims are Typical of the Class.**

Rule 23(a) next requires that Plaintiff's claims are typical of those of the other members of the Class. Fed. R. Civ. P. 23(a)(3). The typicality requirement is satisfied if the claims of the named plaintiff arise from "the same practice or course of conduct that gives rise to the claims of the proposed class members." *Johnson v. District of Columbia*, 248 F.R.D. 46, 53 (D.D.C. 2008) (quotation omitted). Where the claims of named plaintiffs and class members are based on the same core set of facts and underlying legal theory, typicality is generally satisfied. *In re LivingSocial Mktg. & Sales Practice Litig.*, 298 F.R.D. 1, 8 (D.D.C. 2013). The typicality assessment "does not focus as much on the relative strengths of the cases of the named and unnamed plaintiffs as it does on the similarity of the legal and remedial theories behind their claims," and even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories. *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 239 F.R.D. 9, 28 (D.D.C. 2006).

In this case, Plaintiff's claims are typical of the absent class members because each claim is based upon identical conduct—Defendants' uniform practice of transmitting, through the code integrated into the AARP website, their members' sensitive and personally identifiable information to third parties. (Compl. ¶ 66.) Since Plaintiff, like all other class members, agreed to AARP's Privacy Policy and had her information disclosed without her consent, her claims are

the same as those of the absent class members. *See id*. Therefore, the typicality element is also satisfied.

**D. The Adequacy of Representation Requirement is Satisfied.**

The final Rule 23(a) prerequisite requires that a proposed class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The standard for adequacy splits into two prongs: adequacy of the proposed class representative and adequacy of the attorneys seeking appointment as class counsel. *Thorpe v. District of Columbia*, 88 Fed. R. Serv. 3d 274, 2014 WL 1273134, at *25 (D.D.C. 2014). The adequacy requirement generally serves to uncover conflicts of interest between named parties and the class they seek to represent. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997).

In order for a class representative to be found adequate, the representative must have common interests with unnamed members of the class, and "must appear able to vigorously prosecute the interests of the class through qualified counsel." *Daskalea v. Wash. Humane Soc.*, 275 F.R.D. 346, 377 (D.D.C. 2011); *see also Thorpe*, 88 Fed. R. Serv. 3d at 274, 2014 WL 1273134, at *25 (adequacy of representation focuses on conflicts of interest and concerns about the competency of class counsel). As regards the adequacy of class counsel, the considerations include: "(a) the work counsel has done in identifying or investigating potential claims in the action, (b) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, (c) counsel's knowledge of the applicable law, and (d) the resources counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A); *Johnson*, 248 F.R.D. at 58.

In this case, Plaintiff has the same interests as the proposed Class—obtaining relief from Defendants for their unlawful practice of permitting third parties to collect their members' PII

without authorization. (Compl. ¶ 67.) Further, Plaintiff's counsel are well respected members of the legal community, have regularly engaged in major complex litigation, and have had extensive experience in consumer class actions involving issues of similar size, scope and complexity as the present case. (*See* Firm Resume of Edelson PC, a true and accurate copy of which is attached as Exhibit A.) Accordingly, both Plaintiff and her counsel will adequately represent the Class.

## IV. THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULES 23(b)(2) AND (b)(3).

Once the subsection (a) prerequisites have been satisfied, one of the three subsections of Rule 23(b) must be satisfied as well. Here, Plaintiff seeks certification of the proposed Class under Rules 23(b)(2) and (b)(3).

### A. The Proposed Class Meets the Requirements of Rule 23(b)(2).

Rule 23(b)(2) provides that the party or parties opposing certification must have acted or failed to act on grounds generally applicable to the proposed class "so that final injunctive relief or corresponding declaratory relief is appropriate . . . " Fed. R. Civ. P. 23(b)(2); *Dukes*, 131 S. Ct. at 2544. Where a court finds that Rule 23(a)'s commonality requirement is met, there is generally a sufficient showing that the defendant acted on grounds generally applicable to the class as a whole, as Rule 23(b)(2)'s requirement "is often considered to be encompassed by the commonality requirement. *See Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 47 n.17 (D.D.C. 2007).

Here, there is no question that Defendants acted on grounds generally applicable to the proposed Class as a whole. (Compl. ¶ 68.) Defendants allowed third parties to collect their members' sensitive and personally identifiable information—without permission—in a virtually identical manner. Defendants' conduct did not vary from one Class member to another, and they

uniformly represented to Class members through their Privacy Policy and Terms of Service that they would not allow *any* third parties to collect personally identifiable information. Thus, Defendants acted and failed to act on grounds generally applicable to the entire Class. As a result, final injunctive relief is necessary to protect Plaintiff and the Class from such conduct in the future. This satisfies the requirements of Rule 23(b)(2).

**B. The Proposed Class Also Meets the Requirements of 23(b)(3).**

Plaintiff also seeks certification under Rule 23(b)(3), which provides that a class action may be maintained where the questions of law and fact common to class members predominate over questions affecting only individual members, and where the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Kottaras v. Whole Foods Mkt., Inc.*, 281 F.R.D. 16, 18 (D.D.C. 2012). This case easily meets both of these requirements.

*i. Common questions of law and fact predominate.*

Rule 23(b)(3)'s predominance inquiry is meant to test whether proposed classes are "sufficiently cohesive" to warrant adjudication by representation." *Dukes*, 131 S. Ct. at 2566 (quoting *Amchem*, 521 U.S. at 591). The predominance requirement is met when "one or more of the central issues in the action are common to the class and can be said to predominate . . . even though important matters will have to be tried separately." *Bynum*, 214 F.R.D. at 39. Further, for the predominance requirement to be satisfied, "common issues identified as sufficient under Rule 23(a) must be shown by plaintiffs to predominate over the non-common issues, [but] the common issues do not have to be shown to be dispositive." *Id*.

In this case, Plaintiff's and the putative Class's claims all arise from Defendants' unlawful practice of allowing third parties to systematically collect their members' sensitive

information. Defendants' uniform practice is common as to each Class member's claims, and predominates over any issues affecting only individual members. (Compl. ¶ 65.) Further, Plaintiff's and the Class members' claims are all based on uniform contracts, made between Defendants and each Class member. Moreover, the answers to these questions are necessarily subject to common proof, primarily from the functionality of the AARP source code and other information to be found within Defendants' records. *See Dukes*, 131 S. Ct. at 2551 ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.").

As such, the common questions at issue in this case—described in Section III.B, *supra*—predominate, which also favors certification.

*iii. The class action mechanism is superior to other available methods for the adjudication of this matter.*

Rule 23(b)(3) further requires that the class action mechanism be superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P 23(b)(3); *Bynum*, 214 F.R.D. at 31.

That requirement is satisfied here. The injuries suffered by individual Class members are likely to have been relatively small compared to the burden and expense of individual prosecution of the litigation necessitated by Defendant's actions. (Compl. ¶ 69.) Thus, absent a class action, it would be difficult, if not impossible, for the individual members of the Class to obtain effective relief. Maintenance of this case as a class action is also superior to other available methods because it would avoid the necessity for multiple adjudications of identical legal and factual issues, thereby reducing the burden on the judiciary. (*Id.*) Absent class treatment here, each individual member of the Class would be required to present the same or

essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judicial system and the litigants. Such a result would be neither efficient nor fair to anyone, including Defendants. Similarly, class certification would promote consistency of rulings and judgments, and give all parties the benefit of finality.

Accordingly, the superiority requirement is satisfied as well.

## V. CONCLUSION

For the reasons stated above, and which will be borne out by class discovery, this case is appropriate for class certification. Accordingly, Plaintiff Ethel Austin-Spearman, individually and on behalf of the proposed Class, respectfully requests that the Court (1) enter and reserve ruling on her Motion for Class Certification, (2) allow for and schedule discovery to take place on class-wide issues, (3) grant her leave to file a memorandum in support of her Motion for Class Certification upon the conclusion of class-wide discovery, (4) grant her Motion for Class Certification after full briefing of the issues presented herein, and (5) provide all other and further relief that the Court deems equitable and just.

//

//

//

Respectfully submitted,

**ETHEL AUSTIN-SPEARMAN**, individually and on behalf of all others similarly situated,

Dated: July 29, 2014

By: /s/ Maria C. Simon
One of Plaintiff's Attorneys

Maria C. Simon
msimon@thegellerlawgroup.com
THE GELLER LAW GROUP
4000 Legato Road, Suite 1100
Fairfax, Virginia 22033
Tel: 703.679.7067
Fax: 703.259.8584

Jay Edelson*
jedelson@edelson.com
Rafey S. Balabanian*
rbalabanian@edelson.com
Benjamin S. Thomassen*
bthomassen@edelson.com
Alicia E. Hwang*
ahwang@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Motion for admission to be sought.

## CERTIFICATE OF SERVICE

I, Maria C. Simon, hereby certify that on July 29, 2014, I served the above and foregoing ***Plaintiff's Motion for Class Certification*** by causing a true and accurate copy of such paper to be filed and served on all counsel of record via the Court's CM/ECF electronic filing system.

/s/ Maria C. Simon